**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MRH RNMA I Limited Partnership LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Gregory M. Beck, a California resident,<br><br>Defendant. | No. CV-17-01179-PHX-DGC<br><br>**ORDER** |

This is a declaratory judgment action concerning the validity of an attempted assignment and transfer of certain limited partnership interests. Defendant has moved for dismissal based on the Court's inherent discretion in declaratory judgment cases, or alternatively based on the *Colorado River* abstention doctrine. Doc. 8. The motion is fully briefed (Docs. 12, 13), and the Court finds that oral argument is not necessary. For reasons stated below, the Court will grant the motion pursuant to the Court's discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201.

**I.  Background.**

Defendant Gregory Beck and Plaintiff MRH RNMA I Limited Partner, LLC contest whether Beck and the 25 other limited partners in Recorp New Mexico Associates Limited Partnership ("RNMA") were successfully terminated as limited partners. RNMA is one of six entities that initially joined together to develop a master planned community known as Rio West on about 12,000 acres in New Mexico. Doc. 1,

¶¶ 49-50. In 2007, with the help of Sandoval County, New Mexico, the Rio West developers drilled two exploratory groundwater wells on Rio West. Doc. 8-1 at 12. The subsequent financial demise of the Rio West developers and problems with the wells resulted in a complex, multi-party dispute in Arizona state court that has been ongoing for more than seven years.[1] *IMH Special Asset NT 168 v. Aperion Communities, LLLP*, No. CV2010-010943/CV2010-010990 (consolidated).

That state action was originally brought in 2010 by IMH Financial Corporation ("IMH") against the former owner of Recorp Partners, Inc. ("RPI"). IMH is Plaintiff's parent corporation. Doc. 1, ¶ 3. RPI is the general partner of RNMA. *Id.* ¶ 8. After IMH obtained a multi-million-dollar judgment in the state case, the state court appointed receivers over the assets that IMH and the other creditors would acquire to satisfy their judgments. The state court continues to oversee the receiver's management of the assets and adjudicate related disputes ("State Receivership Action").

In the State Receivership Action, IMH obtained 100% of the ownership interests in RPI, a 12% interest in RNMA, and an interest in each of the other five Rio West developers. IMH formed a subsidiary, Stockholder LLC ("Stockholder"), to which it assigned its ownership of RPI. Doc. 1, ¶¶ 3-4. The state court appointed a receiver over Stockholder. *Id.* IMH formed a separate subsidiary, Plaintiff MRH RNMA I, to which it assigned the 12% RNMA interest. Doc. 12 at 2. Beck's limited partnership interest in RNMA amounts to 6.6%. Doc. 1, ¶ 41. The approximately 25 other limited partners, who are not parties to this case, collectively own the remaining RNMA interests.[2] *Id.* ¶ 7.

Plaintiff alleges that RPI, acting through Stockholder's receiver-appointed president, terminated the limited partnership interests of Beck and the other non-IMH-affiliated partners and transferred those interests to Plaintiff in April 2017. Doc. 1, ¶ 93.

---

[1] Four of the developers had their land foreclosed by a secured creditor in 2013, and all six developers are jointly and severally liable to Sandoval County for a $6 million settlement relating to the wells. Doc. 1, ¶¶ 34, 50.

[2] The Court acknowledges that whether Beck and the other limited partners presently own their interests is disputed. The Court expresses no view on this dispute.

Plaintiff seeks a declaratory judgment that this termination and assignment was validly executed pursuant to RNMA's partnership agreement. Doc. 1, ¶ 112. Beck responds that RPI had no authority to terminate these interests because more than 75% of the limited partners voted to remove RPI as general partner before the attempted termination.[3] Doc. 8 at 11. Beck made this same argument in a motion he filed in the State Receivership Action. Doc. 8-1 at 76-85, *Motion for Order that RPI Take No Action as General Partner of RNMA*, State Receivership Action (Jan. 23, 2017). Beck's motion to dismiss this case, however, is not based on the merits of his argument. Beck instead seeks discretionary dismissal in favor of allowing this dispute to be resolved in the ongoing State Receivership Action. Doc. 8.

Attached to Beck's motion are various documents from the State Receivership Action, including Judge Mullins's minute entry dated February 22, 2017. Doc. 8-1 at 61-74 ("Minute Entry"). In the detailed Minute Entry, Judge Mullins denies a joint emergency motion filed by IMH and the receiver to authorize RNMA and another Rio West developer to accept a $1.4 million loan from an IMH subsidiary on what she describes as "unreasonable" terms. *Id.* The proposed loan was to be used to repair and remediate leaks in the Rio West wells that began in December 2015 and significantly worsened in December 2016. *Id.*; Doc. 1, ¶¶ 55-73. The terms of the proposed loan "virtually ensure[d] default," which would have resulted in IMH taking over all of RNMA's assets. Doc. 8-1 at 67.

The Minute Entry acknowledged Beck's argument that RPI was no longer general partner as an additional reason to deny the motion, stating that "the role of the Receiver as General Partner is in dispute." Doc. 8-1 at 70. But Judge Mullins declined to rule on Beck's motion because there was not yet a complete record on the factual issues it raised. *Id.* at 70-71 ("The Court is unwilling to disregard the concerns raised by . . . Beck.").

---

[3] Beck makes alternative arguments as to why RPI's attempted termination was ineffective (Doc. 8, at 12-14), but the Court need not address the merits of those arguments to determine the question presented.

- 3 -

**II. The Declaratory Judgment Act.**

The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). When deciding whether to hear claims under the Declaratory Judgment Act, district courts should (1) avoid "needless determination of state law issues," (2) discourage "forum shopping," and (3) avoid "duplicative litigation." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (citing *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)); *see also Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). Applying the factors, the Court finds dismissal proper.

**A. Needless Determination of State Law Issues.**

This case does not involve a "compelling federal interest" given that it is based on diversity of citizenship and involves no federal question. *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991) (Where "the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir."), *overruled on other grounds by Dizol*, 133 F.3d 1220. One could argue that this case presents an issue of particular concern to Arizona because it involves an Arizona receivership and an issue already before the Arizona court, but the Court does not find this argument particularly compelling and relies on the other *Brillhart* factors for its decision.

**B. Forum Shopping.**

Beck argues, and the Court agrees, that Plaintiff has engaged in forum shopping. Plaintiff admits in its response that it brought this case to "prevent Defendant from interfering with Plaintiff's funding of the repair of the Wells," an issue before the state court. Doc. 12 at 4. Plaintiff's only indication that Beck would "interfere" with that funding was that Beck had already intervened in the State Receivership Action and successfully opposed IMH's proposed funding of the repairs and takeover of RNMA. Thus, it appears that Plaintiff filed this case in reaction to events that occurred in the state

court proceeding. After the state judge thwarted IMH's first attempt to take over RNMA, IMH sent its subsidiary to this Court to seek approval of another means to the same end. "[F]ederal courts should generally decline to entertain reactive declaratory actions." *Dizol*, 133 F.3d at 1225.

Plaintiff argues that it is not technically a named party in the State Receivership Action and that this case involves diverse parties and an issue of New Mexico law. Doc. 12 at 9. But Plaintiff was created by IMH for the sole purpose of receiving assets on IMH's behalf in the State Receivership Action, and IMH has heavily litigated the state case for more than seven years without complaining that the Arizona court should not decide issues of New Mexico law.

Plaintiff also asserts that it wishes to use Rule 57 of the Federal Rules of Civil Procedure to obtain speedy adjudication. Doc. 12 at 9. But Arizona Rule of Civil Procedure 57 contains an identical speedy-hearing provision, and the emergency demanding immediate attention has been ongoing since December 2016.

If Plaintiff wished to obtain a speedy determination on the issue presented in this case, it could have intervened in the state action or had IMH make any relevant motions or arguments. Plaintiff cannot come to this Court for relief simply because it is displeased with the state judge's handling of the case.

### C. Duplicative Litigation.

"If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225; *see also Brillhart*, 316 U.S. at 495. The State Receivership Action has been ongoing since 2013, and centers on the management and administration of the assets subject to the receivership. RPI is subject to the receivership. Any action taken by RPI subsequent to the appointment of the receiver was taken pursuant to the state court's receivership order and is subject to the state court's oversight. The issue presented in this case is whether an

action taken by RPI's receiver-appointed president was valid. This issue goes to the heart of the State Receivership Action.

Even if, as Plaintiff argues, the exact issue presented in this case is not pending before the state court,[4] it nonetheless is closely related to a matter with which the state court has been concerned since 2013: whether the receiver is managing the assets within its authority and in the best interest of the creditors. It would be uneconomical and presumptuous for this Court to interfere with the state court's ongoing administration of a complex, multi-year case. Indeed, just ruling on this motion required the Court to re-hash years of factual and procedural background with which the state court is already familiar.

Plaintiff points to additional factors used in the Ninth Circuit, including whether the declaratory action will settle all aspects of the controversy, whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue, whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage, whether the use of a declaratory action will result in entanglement between the federal and state court systems, and whether the Court's action might affect the convenience of the parties and the availability and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225 n.5. But many of these factors point towards dismissal as well.

Although deciding the discrete issue in this case would settle the controversy between the parties on the validity of the transfer, it would not settle all aspects of the controversy. Doc. 12 at 11. Deciding a small piece of a much larger controversy would

---

[4] The parties dispute whether Beck's motion regarding the status of RPI as general partner is actually pending. Beck argues that the motion is pending, and that the issue presented in this case – whether RPI's attempted transfer was valid – is wholly dependent on determination of the issue presented in his state court motion: whether RPI was general partner at the time it attempted the transfer. Doc. 8 at 11-12. Plaintiff responds that Judge Mullins denied the motion in her Minute Entry. Doc. 12 at 5. In fact, Judge Mullins specifically declined to rule on the motion. Doc. 8-1 at 70. Thus, the motion appears to be "pending" in the sense that it has yet to be formally disposed of by a court order. But Plaintiff also points out – and Beck does not dispute – that the motion has been briefed for more than 60 days, yet Beck has taken no action to urge a hearing or decision on the motion. Doc. 12 at 5. Plaintiff does not explain why it or its parent IMH has not urged a ruling on the motion.

not "serve a useful purpose in clarifying the legal relations at issue." *Dizol*, 133 F.3d at 1225 n.5. Moreover, if this Court attempted to resolve the entire controversy it would risk entanglement with the state court that issued the receivership order and has overseen its execution since 2013. Finally, allowing this case to proceed would unnecessarily inconvenience the parties and the Court when another forum, already familiar with the complex background of the dispute, is available.

Because two of the *Brillhart* factors and several additional Ninth Circuit factors favor dismissal, the Court will dismiss this case in the exercise of its discretion under the Declaratory Judgment Act.

### III. Defendant's Fee Request.

Beck requests an award of attorneys' fees under A.R.S. § 12-341.01(A). Doc. 8 at 18. The Court exercises its discretion to deny that request. Fee shifting, if any, should be addressed by the state court that has before it the full range of the parties' actions and litigation tactics.

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 8) is **granted**. The Clerk is directed to **terminate** this action.

Dated this 27th day of September, 2017.

_____
David G. Campbell
United States District Judge